1   KEKER, VAN NEST & PETERS LLP
    ROBERT A. VAN NEST - # 84065
2   rvannest@keker.com
    LEO L. LAM - # 181861
3   llam@keker.com
    MATTHEW M. WERDEGAR - # 200470
4   mwerdegar@keker.com
    MICHELLE YBARRA - # 260697
5   mybarra@keker.com
    JAY RAPAPORT - # 281964
6   jrapaport@keker.com
    BAILEY W. HEAPS - # 295870
7   bheaps@keker.com
    DAVID J. ROSEN - # 296139
8   drosen@keker.com
    KATIE LYNN JOYCE - # 308263
9   kjoyce@keker.com
    ANNA PORTO - #319903
10  aporto@keker.com
    633 Battery Street
11  San Francisco, CA 94111-1809
    Telephone:    415 391 5400
12  Facsimile:    415 397 7188

13  Attorneys for Defendant
    ZSCALER, INC.

14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17                   OAKLAND DIVISION

18  SYMANTEC CORPORATION and          Case No. 4:17-cv-04414-JST (TSH)
    SYMANTEC LIMITED,
19                                     **DEFENDANT ZSCALER, INC.'S NOTICE
               Plaintiffs,             OF MOTION AND MOTION TO DISMISS
20                                     SECOND AMENDED COMPLAINT;
          v.                           MEMORANDUM OF POINTS AND
21                                     AUTHORITIES**
    ZSCALER, INC.,
22
               Defendant.
23                                     Date:        March 4, 2020
                                       Time:        2:00 p.m.
24                                     Courtroom:   6 – 2nd Floor
                                       Judge:       Honorable Jon S. Tigar
25
                                       Date Filed:  June 22, 2017
26                                     Trial Date:  June 14, 2021

27

28

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 4:17-cv-04414-JST (TSH)

1355571

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................1

II.  STATEMENT OF THE ISSUE TO BE DECIDED ...........................................1

III.  STATEMENT CONCERNING ORAL ARGUMENT ......................................2

IV.  ARGUMENT ......................................................................................................2

A.  The '446 patent lacks patent-eligible subject matter. ...............................2

1.  *Alice* step one: the '446 patent claims are directed to the abstracted idea of filtering content based on where the content comes from and what the content is. .......................................................................4

2.  *Alice* step two: the '446 patent claims do not contain an inventive concept. ..........................................................................................6

B.  Assignor estoppel does not bar Zscaler's § 101 challenge. ....................8

V.  CONCLUSION ...................................................................................................9

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,

5
   728 F.3d 1336 (Fed. Cir. 2013)................................................................................................6

6
*Alice Corp. Pty. v. CLS Bank Int'l*,
   573 U.S. 208 (2014).........................................................................................1, 2, 6, 7

7

8
*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016).......................................................................4, 5, 6

9

10
*Brightedge Techs., Inc. v. Searchmetrics, GmbH*,
   304 F. Supp. 3d 859 (N.D. Cal. 2018) ...................................................................7

11
*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018).........................................................................6, 8

12

13
*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014).............................................................................7

14
*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)..............................................................................6

15

16
*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)..............................................................................5

17

18
*Lear, Inc. v. Adkins*,
   395 U.S. 653 (1969)................................................................................................8

19

20
*NexusCard, Inc. v. Kroger Co.*,
   173 F. Supp. 3d 462 (E.D. Tex. 2016) ...................................................................6

21
*Ramirez v. Cty. of San Bernardino*,
   806 F.3d 1002 (9th Cir. 2015) ...............................................................................2

22

23
*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)..............................................................................6

24
*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)..........................................................................2, 7

25

26
*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)..........................................................................7, 8

27

28

ii

1355571

1

**Federal Statutes**

2   35 U.S.C. § 101 .................................................................................................2, 4, 8

3   35 U.S.C. § 282(b), (b)(2) ..............................................................................................8

4   **Rules**

5   Fed. R. Civ. P. 12(b)(6) ...................................................................................................1

6

**Other Authorities**

7

Mark A. Lemley, *Rethinking Assignor Estoppel*, 54 Hous. L. Rev. 513 (2016) .............................8

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

1355571

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** that on March 4, 2020, at 2:00 p.m., or as soon thereafter as the matter can be heard in Courtroom 6 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant Zscaler, Inc. ("Zscaler"), will and hereby does move under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing plaintiffs Symantec Corp.'s and Symantec Ltd.'s ("Symantec's") claims relating to U.S. Patent No. 8,316,446 (the "'446 patent").

This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities and Appendix A and B, all other pleadings and papers on file or to be filed in the above-entitled action, the arguments of counsel, and any other matters that may properly come before the Court for its consideration.

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I.   INTRODUCTION

The claims of the '446 patent, though dressed up in technical jargon, are directed to abstract and patent-ineligible subject matter.  Specifically, the '446 patent claims filtering content based on origin and type, which is well-recognized as an abstract concept.  These claims consist entirely of functional, results-based language.  They are classic "do it on a computer" claims that merely add generic computer components and processes to activities long performed by humans alone.  Symantec makes no plausible allegations of inventive concepts actually captured in claim language.  The '446 patent therefore fails at both steps of the test laid out in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

### II.   STATEMENT OF THE ISSUE TO BE DECIDED

Whether Count 2 of Symantec's Second Amended Complaint ("SAC") (ECF No. 256), which alleges infringement of the '446 patent, should be dismissed with prejudice for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

---

[1] Throughout this brief, unless otherwise stated, emphases were added to quotations, and internal punctuation, alterations, and citations were omitted from them.

1    Although Zscaler also contends that Count 1 of the SAC, which relates to the '429 patent,

2    should be dismissed for failure to state a claim, all non-assignor estoppel-related proceedings for

3    that patent are currently stayed.  *See* Stipulated Request and Order Staying Non-Assignor

4    Estoppel-Related Proceedings for the '429 Patent (ECF No. 260).  If and when litigation on the

5    '429 patent goes forward, Zscaler will bring a similar motion as to that patent.

6    **III.    STATEMENT CONCERNING ORAL ARGUMENT**

7    Zscaler files this motion because the SAC mooted Zscaler's previous motion to dismiss

8    this claim.  *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Because the

9    relevant § 101 issues have already been briefed and argued, Zscaler does not request oral

10   argument for this motion.

11   **IV.    ARGUMENT**

12   "Laws of nature, natural phenomena, and abstract ideas are not patentable" under 35

13   U.S.C. § 101.  *Alice*, 573 U.S. at 216.  Invalidity under § 101 "may be, and frequently has been,

14   resolved on a Rule 12(b)(6) or (c) motion."  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161,

15   1166 (Fed. Cir. 2018) (affirming grant of Rule 12(c) judgment on the pleadings).

16   **A.    The '446 patent lacks patent-eligible subject matter.**

17   The '446 patent claims "methods and apparatus for blocking unwanted software

18   downloads."  *See* App'x A ('446 patent) at 1:7–8.  Claim 1 recites a method for intercepting an

19   attempted file download from a URL, categorizing the URL according to a URL database,

20   analyzing the attempted download by file type, and deciding to block or permit the attempted

21   download (using a "blocking decision module") based on the URL category and file type.  *Id.* at

22   9:25–49.  Independent claims 5 and 8 are substantially similar, but recite a network device and a

23   non-transitory machine-readable storage medium, respectively.  *Id.* at 9:59–10:22, 10:29–56.

24   Dependent claims 2, 6, and 9 require that the detected file extension be among one of several

25   specific extensions.  *Id.* at 9:50–53, 10:23–25, 10:57–59.  Dependent claim 3 provides that "the

26   URL database is stored remotely," and dependent claims 4, 7, and 10 provide that the method,

27

28

1355571

1   device, or medium also scans "outgoing" or "outbound" communications for "spyware

2   signatures." *Id.* at 9:54–58, 10:26–28, 10:60–62.[2]

3        As the '446 patent specification explains:

4        traffic from the Internet [ ] is passed through a Uniform Resource Locator (URL)
    filter [ ].  The URL filter [ ] is configured to block the access of installers from
5        certain websites to the internal network [ ].  In this manner, the URL filter [ ] can
    block downloads from websites deemed undesirable.
6

7   *Id.* at 4:21–26.  In the claimed invention, the URL filter finds a category for a received URL by

8   looking it up in a list of URLs sorted by categories.  *Id.* at 6:66–7:5 (The URL filter first

9   "categorize[s] the URL from which a download is arriving" by accessing a URL database that

10  "contains URLs organized by category.").  The "file type identifier" simply performs its claimed

11  function—it "is configured to identify the download by file type."  *Id.* at 7:39–40. This identifier

12  identifies the file type by referencing a list—either a "file extension list" that "associates file

13  types with file extensions" or a "file type signature list" that "includes signatures of various file

14  types and the file types with which they are associated."  *Id.* at 7:52–65.  The file-type

15  information is provided to a "blocking decision module" that "is configured to either block or

16  pass the incoming download."  *Id.* at 8:6–8.  "[T]his decision is based on the information

17  collected by the URL filter [ ] and the file type identifier [ ]."  *Id.* at 8:8–10.

18       In short, the '446 patent claims looking up a URL to find out its category, and blocking

19  certain file types from being downloaded depending on that category.  *See, e.g.*, SAC ¶ 65.

20  Filtering content in this fashion, however, has long been recognized as an abstract idea.  And

21  Symantec's latest amended pleading—like its predecessors—does not actually ***explain*** what

22  aspects of this filtering could be considered inventive.  Instead, Symantec offers only attorney

23  argument on inventiveness, none of which can hide that the claims recite only the abstract

24  functional steps of identifying URL and file type and then filtering content based on URL and file

25  type.

26

27

28  [2] Symantec has elected to assert only claims 1, 3, 4, and 5.

3
NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 4:17-cv-04414-JST (TSH)

1355571

1.   ***Alice* step one: the '446 patent claims are directed to the abstracted idea of filtering content based on where the content comes from and what the content is.**

Stripped of extraneous computer verbiage, the '446 patent claims amount to the following functional steps:

1.    Intercept an attempted download of a file.

2.    Identify a "URL category" by comparing the download against a database of URL categories.

3.    Identify a "file type" by checking the file extension or file signature.

4.    Make an access decision based on the above information.[3]

These functional steps reflect nothing more than the abstract and well-known idea of filtering content based on its origin and type. *See Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) ("[F]iltering content is an abstract idea because it is a longstanding, well-known method of organizing human behavior, similar to concepts previously found to be abstract."). All of the '446 patent's essential steps can be—and indeed are—performed by humans. For example, the steps of claim 1 are virtually identical to the old and common practice of sorting mail in a mailroom:

| '446 patent claim 1 | Sorting paper mail |
|---|---|
| A method, comprising: | A method of sorting mail in a corporate mailroom; |
| intercepting at a Uniform Resource Locator (URL) filter module of a network device, an attempted download of a file from a URL; | mailroom clerk receives mail; |
| categorizing by the URL filter module of the network device the URL into a URL category according to a URL database; | mailroom clerk identifies sender (*e.g.*, retailer); |
| analyzing by a file type identifier module of the network device the file to determine its file type, wherein the | mailroom clerk identifies type of mail (*e.g.*, sales catalog); and |

[3] As noted above, certain dependent claims also tack on a requirement for scanning outgoing communications for spyware, albeit with no provision for acting upon the results of a spyware scan. Symantec has never contended that these dependent claims—which appear to serve no purpose—are germane to the § 101 analysis.

4

1355571

| | |
|---|---|
| file type of the file is determined by detecting one or more of a file type signature in the file and a file extension of the file, and identifying the file type of the file based on one or more of the file type signature detected in the file and the file extension of the file; and | |
| blocking or not blocking the attempted download according to a decision output of a blocking decision module of the network device which receives as inputs the URL category and the file type, wherein (i) if the URL category indicates a blacklist, the decision output is to block the download, (ii) if the URL category indicates a whitelist, the decision output is to allow the download, otherwise, the URL category specifies a URL content category indicating a type of content provided by the URL, and the decision output is based on whether files of said file type are permitted for URLs in the URL content category. | mailroom clerk forwards or does not forward mail according to policy based on identity of sender and type of mail (*e.g.*, no forwarding sales catalogs from retailers). |

As the Federal Circuit has previously recognized—at Symantec's own urging—"it was long-prevalent practice for people receiving paper mail to look at an envelope and discard certain letters, without opening them, from sources from which they did not wish to receive mail based on characteristics of the mail." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016). That analogy applies with equal force here.

Indeed, the Federal Circuit has held that a similar patent directed to a method and system for allowing an internet service provider "to perform user-customizable content filtering of information retrieved from the Internet" claimed the abstract idea of filtering content. *See* App'x B (U.S. Patent No. 5,987,606) at 1:10–11. One of the claims at issue in *Bascom* covered "an ISP server for filtering content forwarded to controlled access network account" based on destination addresses, wherein the ISP server included master inclusive-list and exclusive-list of sites, and a "filtering scheme" that allowed network access requests if the destination address was on the

5

1355571

1  inclusive list but not on an exclusive list. *Id.* at 8:63–9:11. The Federal Circuit held this claim

2  and others were "directed to filtering content on the Internet" and "that filtering content is an

3  abstract idea." *Bascom*, 827 F.3d at 1348. The "fundamental concept" and "focus" of that patent

4  is the same as that of the '446 patent. *See Accenture Glob. Servs., GmbH v. Guidewire Software,*

5  *Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350,

6  1353 (Fed. Cir. 2016). Like the patent in *Bascom*, the '446 patent is directed to a filtering scheme

7  that blocks or allows content based on attributes (*e.g.*, the source or destination) of that content.

8  **2.**   ***Alice* step two: the '446 patent claims do not contain an inventive**
   **concept.**

9

10  To save otherwise abstract claims at step 2, "an inventive concept must be evident in the

11  claims," *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), and must

12  provide "significantly more" than the "ineligible concept itself," *BSG Tech LLC v. Buyseasons,*

13  *Inc.*, 899 F.3d 1281, 1289–90 (Fed. Cir. 2018). A "wholly generic computer implementation,"

14  *Alice*, 573 U.S. at 223, with "purely functional steps that purport to solve the [alleged] problem,

15  *NexusCard, Inc. v. Kroger Co.*, 173 F. Supp. 3d 462, 467 (E.D. Tex. 2016), is not enough.

16  A generic, computer implementation, however, is precisely what the '446 patent claims

17  entail. The asserted independent claims require various "module[s]" or "software subroutine[s]"

18  that perform conventional functions that any computer might perform: *e.g.*, a URL filter module

19  that intercepts an attempted download of a file and categorizes the URL from which the file

20  comes. '446 patent at 9:25–49, 9:59–10:22. Nothing in the claim language requires any specific

21  new computer or concrete technology to achieve these results, a fact the '446 patent specification

22  drives home:

23  > [V]arious specific modules, such as "file type identifier" and "URL filter" have
   > been described. However, these names are used merely to describe and illustrate
24  > various aspects of the present invention, and in no way limit the scope of the
   > present invention.
25
26  > Furthermore, various modules, such as the blocking decision module 320, in FIG.
   > 3, can be implemented as software or hardware modules, or without dividing their
27  > functionalities into modules at all. The present invention is not limited to any
   > modular architecture either in software or in hardware, whether described above or
   > not.
28

*Id.* at 9:3–17.  In short, the claims fail to specify ***how*** any claimed module or subroutine actually achieves its desired results.  Instead, the claims use only "generic functional language to achieve the[] purported solutions."  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).  This "functional and result-focused character of the claims renders the . . . invention patent-ineligible."  *Brightedge Techs., Inc. v. Searchmetrics, GmbH*, 304 F. Supp. 3d 859, 873 (N.D. Cal. 2018).

Symantec's various attempts to show inventiveness amount to unpersuasive attorney argument.  Take, for example, Symantec's bare assertion that "[t]he claimed approaches are tied to computers and cannot be performed by a human alone."  SAC ¶ 66.  With this argument, Symantec not only ignores how a human ***can*** perform filtering content based on origin and type, but also ignores well-settled law holding that carrying out an abstract idea on a computer or in any other "particular technological environment" "cannot transform a patent-ineligible abstract idea into a patent-eligible invention," *Alice*, 573 U.S. at 223; *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

Symantec fares no better with its insistence that "the[] claim elements, individually or in combination, are unconventional, and nothing in the specification describes these concepts as well-understood, routine, or conventional."  SAC ¶ 67.  The mere fact that a specification does not admit the claimed invention is conventional is neither remarkable nor helpful to Symantec.  No specification would make such an admission.  Moreover, the specification here—consistent with the claim language—***disavows*** the use of any specific computer or network architecture: "the present invention is not limited to any modular architecture either in software or in hardware," and "embodiments of the present invention can be implemented in multiple proxy servers, a router, a gateway device, a personal computer, a host device, or any combination of the above." '446 patent at 9:15–16, 9:20–23.

Unsurprisingly, Symantec's "example[s]" of how the '446 patent's claims reflect an unconventional approach consist entirely of repeating the claim language.  *See* SAC ¶ 67.  But the claim limitations "are themselves abstract," *SAP Am.,* 898 F.3d at 1169, and "[i]t has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot

7

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 4:17-cv-04414-JST (TSH)

1355571

1    supply the inventive concept that renders the invention significantly more than that ineligible

2    concept," *BSG Tech LLC*, 899 F.3d at 1290.

3         Nor can Symantec gain traction by asserting that the claimed inventions "improve the

4    functioning of the computer networks in which they are implemented" and "offered a number of

5    additional technical advantages over prior approaches."  SAC ¶¶ 69, 70.  Even if the patent

6    purports to "solve[] various technical problems," the claims "only use[] generic functional

7    language to achieve these purported solutions."  *Two-Way Media*, 874 F.3d at 1339.  The

8    "[i]nquiry therefore must turn to any requirements for ***how*** the desired result is achieved."  *Id.*

9    (emphasis in original).  Here, "[n]othing in the claims . . . requires anything other than

10   conventional computer and network components operating according to their ordinary functions,"

11   and thus they fail to pass muster at *Alice* step two.  *Id.*

12        **B.      Assignor estoppel does not bar Zscaler's § 101 challenge.**

13        As Zscaler explained in its cross-motion for partial summary judgment and supporting

14   reply, the doctrine of privity does not bar Zscaler from challenging the validity of the '446 patent.

15   *See generally* Motion for Partial Summary Judgment of No Privity for Assignor Estoppel (ECF

16   No. 198); Reply in Support of Motion for Partial Summary Judgment of No Privity for Assignor

17   Estoppel (ECF No. 233).  The Court is therefore free to dismiss that patent after it has resolved

18   the pending cross-motions on assignor estoppel.[4]

19   //

20

21

22

23

24

---

[4] Zscaler reserves the right to argue that assignor estoppel is inconsistent with the Patent Act, 35
25   U.S.C. § 282(b), (b)(2), Supreme Court precedent, *see Lear, Inc. v. Adkins*, 395 U.S. 653 (1969),
     and sound public policy, *see* Mark A. Lemley, *Rethinking Assignor Estoppel*, 54 Hous. L. Rev.
26   513 (2016).  Zscaler also reserves the right to argue that the doctrine should at least be narrowed
     significantly, and held not to apply to § 101 challenges.  Among other things, one historic
27   rationale for assignor estoppel—the information asymmetries in connection with patent
     prosecution—is immaterial to § 101.  Both assignor and assignee are equally capable of
28   understanding the law of patent eligibility.

1355571

**V.    CONCLUSION**

For the foregoing reasons, the Court should dismiss Symantec's claims based on the '446 patent.

Respectfully submitted,

Dated:  December 13, 2019            KEKER, VAN NEST & PETERS LLP

By:   /s/ Jay Rapaport
ROBERT A. VAN NEST
LEO L. LAM
MATTHEW M. WERDEGAR
MICHELLE YBARRA
JAY RAPAPORT
BAILEY W. HEAPS
DAVID J. ROSEN
KATIE LYNN JOYCE
ANNA PORTO

Attorneys for Defendant
ZSCALER, INC.

9

1355571